UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEWANDA JACKSON,

       Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

       Defendant.

_____/

Case No. 5:20-cv-12873
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19) AS MOOT, DENY PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT (ECF No. 22) ON THE MERITS, GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 24), and AFFIRM THE COMMISSIONER'S DECISION**

**I.   RECOMMENDATION**: First, the Court should **DENY AS MOOT** Plaintiff's motion for summary judgment. (ECF No. 19.) Additionally, for the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's amended motion for summary judgment (ECF No. 22) on the merits, **GRANT** Defendant's motion for summary judgment (ECF No. 24), and **AFFIRM** the Commissioner's decision.

## II. REPORT

Plaintiff LeWanda Jackson brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security (Commissioner) denying her application for Disability Insurance (DI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's amended motion for summary judgment (ECF No. 22), the Commissioner's cross-motion for summary judgment (ECF No. 24), and the administrative record (ECF No. 15).

### A. Background and Administrative History

Plaintiff filed the application for disability insurance benefits (DIB) at issue in this appeal in August 2016, alleging that her disability began on July 24, 2009, at the age of 44. (ECF No. 15-5, PageID.323-330.) In her disability report, she lists major "depressive disorder – recurrent," panic disorder, anxiety, cognitive/behavioral disorders, anemia, sleep disorder – apnea, asthma, obesity, high blood pressure/chest pains, and "Pre-diebetic" [sic] as limiting her ability to work. (ECF No. 15-6, PageID.364.) Her application was denied on December 9, 2016. (ECF No. 15-3, PageID.184.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ). (ECF No. 15-4, PageID.228-229.) On May 21, 2018, ALJ Mary Connolly held a hearing, at which Plaintiff and a vocational expert (VE), Annette Holder, testified.

(ECF No. 15-2, PageID.147-182.)  On June 28, 2018, ALJ Connolly issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 15-3, PageID.196-211.)

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 15-4, PageID.275-277.)  And on May 22, 2019, the Appeals Council granted the request and remanded the case to the ALJ to: (1) further evaluate the severity of the claimant's physical impairments of hypertension, obesity and diabetes (20 CFR 404.1520); (2) give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-16 and 96-8p); and, (3) obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14 and 85-1. (ECF No. 15-3, PageID.212-216; *see also*, ECF No. 15-2, PageID.69.)

On October 18, 2019, ALJ John Dodson held a second hearing, at which Plaintiff, Plaintiff's mother (Geraldine Jackson), and VE Joanne White, testified. (ECF No. 15-2, PageID.102-146.)  On December 3, 2019, ALJ Dodson issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act through December 31, 2014, Plaintiff's date last insured (DLI).  (ECF No. 15-2, PageID.66-82.)

3

Plaintiff submitted a request for review of the hearing decision/order. (ECF No. 15-4, PageID.320-321.) However, on September 1, 2020, the Appeals Council denied Plaintiff's request for review. (ECF No. 15-2, PageID.59-65.) Thus, ALJ Dodson's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on October 27, 2020. (ECF No. 1.)

### B.   Plaintiff's Medical History

The administrative record contains approximately 1,538 pages of medical records, which were available to the ALJ at the time of his December 3, 2019 decision. (ECF No. 15-7 – 15-17, PageID.464-2012 [Exhibits 1F-18F].) These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 24, 2009, her alleged onset date, through December 31, 2014, her DLI. (ECF No. 15-2, PageID.71.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: affective disorder, anxiety, hypertension, diabetes, asthma, and obesity. (ECF No. 15-2, PageID.71-72.) At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments. (ECF No. 15-2, PageID.72-73.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's RFC[1] and determined that Plaintiff had the RFC:

> to perform light work . . . except no ladders, scaffolds, or ropes; unskilled work involving simple, routine, repetitive tasks; no work with the public; occasional interaction with coworkers and supervisors; no concentrated exposure to hazards or pulmonary irritants; and off task 10%.

(ECF No. 15-2, PageID.73-75.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (ECF No. 15-2, PageID.75-76.) At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as garment sorter, merchandise checker, and warehouse worker. (ECF No. 15-2, PageID.76-77.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged onset date through her DLI. (ECF No. 15-2, PageID.77.)

    **D.**    **Standard of Review**

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E. Analysis

Plaintiff contends that: (1) the ALJ's finding that she did not meet or equal Listings 12.04 or 12.06 is contrary to substantial evidence in the record; and (2) the RFC is contrary to substantial evidence in the record, as "the record evidence shows that [her] depression and anxiety prevent her from working at any work location with other people." (ECF No. 22, PageID.2056-2063; *see* ALJ's Opinion, ECF No. 15-3, PageID.202-203.)[2] The Commissioner opposes Plaintiff's motion,

---

[2] Plaintiff's counsel is reminded that, in the future, he must comply with my Practice Guidelines for Social Security cases, which state: "All motions and briefs must comply with Local Rule 7.1. The parties are particularly reminded of the requirement that all briefs must include an 'Issues Presented' page. On that page, the parties shall outline the issues to be presented in their briefing. In the case of a

arguing that substantial evidence supports the ALJ's Step 3 determination, and that "[t]he ALJ set forth the two-step process for evaluating Plaintiff's symptoms and supportably concluded that Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were 'not entirely consistent with the medical evidence and other evidence in the record.'" (ECF No. 24, PageID.2074-2084.) For the reasons that follow, I agree with the Commissioner.

### 1. The ALJ did not err at Step 3

Plaintiff bears the burden of proving that her impairments meet or medically equal a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listings, located at Appendix 1 to Subpart P of the regulations, describe impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). "A claimant must satisfy all of the criteria to meet the listing." *Rabbers*, 582 F.3d at 653. Moreover, all of the criteria must be met concurrently for a period of twelve consecutive months. *See* 20 C.F.R. § 404.1525(c)(3), (4). An ALJ's explanation as to why a claimant did not meet or medically equal a

---

motion for summary judgment or remand, the 'Issues Presented' must indicate the error allegedly committed by the Administrative Law Judge, i.e., the bases for the appeal and grounds for reversal. Within the parties' briefs, the issues presented should be labeled as section headings, and should match the items listed on the 'Issues Presented' page."

listing need not be confined to the section of the decision explicitly addressing Step 3. *Staggs v. Astrue*, No. 2:09-cv-00097, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) ("Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis.") (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)).

Defendant inexplicably cites Listings 12.06 and 12.08 in its summary judgment motion (ECF No. 24, PageID.2074-2078), when the ALJ examined Listings 12.04 and 12.06 in his decision (ECF No. 15-2, PageID.72-73), and Plaintiff also appears to focus on 12.04 and 12.06 in her amended summary judgment motion, as she references depression and anxiety (ECF No. 22, PageID.2056-2061). In any case, for the reasons more fully explained herein, the Court should find that the ALJ did not err at Step 3.

### a. Paragraph B criteria

To medically equal Listings 12.04 (depressive, bipolar, or related disorders) or 12.06 (anxiety or obsessive-compulsive disorder) under the "B Criteria," Plaintiff was required to establish one extreme limitation or two marked limitations in the following areas of mental functioning: (1) understand, remember, or apply

9

information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

Again, Plaintiff asserts that she had a marked limitation in each of the Paragraph B criteria as a result of her mental impairments.  (ECF No. 22, PageID.2059.)  However, the ALJ's finding that Plaintiff did not meet the Paragraph B criteria is supported by substantial evidence.

First, Plaintiff cites almost exclusively to her own testimony to argue that she had marked limitations in each of the Paragraph B criteria.  But the ALJ acknowledged Plaintiff's testimony and concluded that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  (ECF No. 15-2, PageID.74.)  And an ALJ is not required to accept a claimant's subjective complaints if those subjective complaints are inconsistent with the objective medical evidence in the record.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).

Moreover, although the ALJ's decision is notably sparse and underdeveloped in some areas, substantial evidence supports the ALJ's findings with regard to each of the Paragraph B criteria.  The ALJ concluded Plaintiff had only a mild limitation in understanding, remembering or applying information,

which "refers to the abilities to learn, recall, and use information to perform work activities," 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E(1), stating: "The claimant denied any memory issues during an appointment shortly after the alleged onset date. This was unchanged on subsequent evaluations. She was working as an administrative assistant and feeling well. (Exhibit 2F/52, 54). The State agency found only mild limitation in this area. (Exhibit 1A)." (ECF No. 15-2, PageID.72.)

A review of the record confirms these findings. Progress notes from a July 27, 2009 appointment with Dr. Lopa Rana, state: "The patient is a 44 [year] old female living by herself, works at the Apartment building as an administrative assistant. She reports she has been feeling well; Prozac has helped stabilize the mood fairly well. Sleep, appetite, weight, interest and motivation have been restored. No psychosis, mania or substance abuse reported." Dr. Rana further noted "resolution of symptoms of depression and anxiety" and rated her active risk as "moderate." Plaintiff also denied any memory problems at that appointment. (ECF No. 15-7, PageID.529.) And she continued to deny memory issues at subsequent appointments. (*See, e.g.*, ECF No. 15-7, PageID.531, 533.) Further, as the ALJ stated, the state agency consultant found only mild limitations in the Paragraph B criteria. (ECF No. 15-3, PageID.192.) Plaintiff, again citing to her own testimony, asserts that "[t]he Rule provides examples that [she] could not

11

accomplish such as identifying and solving problems, sequencing multiple-step activities, or not being able to recognize the fact that she was making mistakes and correcting them when she was misfiling documents in her clerical job." (ECF No. 22, PageID.2057 (citing ECF No. 15-2, PageID.157).) However, accepting these statements would require the Court to re-weigh evidence, which it is not permitted to do. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (it is not within the province of the Court to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ").

With regard to her ability to interact with others, Plaintiff argues that she had a marked limitation in this area because she suffered panic attacks when in work-related situations or filling out job applications, and her "depression and anxiety prevent her from asking for help when needed—she needed help from her mother to take her medication and run errands—and initiating or sustaining conversation when she was sad and suicidal." (ECF No. 22, PageID.2057-2058.) But, the ALJ concluded Plaintiff had a moderate limitation in interacting with others, stating: "The records reference panic attacks and difficulty interacting with others. (Exhibit 6F/19). However, office notes prior to and after the alleged onset date show decreased psychiatric symptoms, and she was working in a job involving customer service. (Exhibit 2F/52, 54)." (ECF No. 15-2, PageID.72.) And a

12

review of the records cited by the ALJ supports these findings. *See Reynolds*, 424 F. App'x at 414. Further, as the ALJ noted in the RFC portion of his decision (ECF No. 15-2, PageID.74-75), Plaintiff was able to attend appointments alone (*see, e.g.*, ECF No. 15-7, PageID.529, 531, 533).

For the Paragraph B criteria of concentration, persistence, and maintenance of pace, which "refers to the abilities to focus attention on work activities and stay on task at a sustained rate," 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E(3), the ALJ supportably found that Plaintiff had a moderate limitation because: "Exhibit 2F notes intact concentration and attention on exam. (Exhibit 2F/52, 54). She was able to work after the alleged onset date." (ECF No. 15-2, PageID.72.) Although Plaintiff only possibly worked for a very short time after her alleged onset date (*see* ECF No. 15-7, PageID.529),[3] mental status examinations during the relevant period note logical and coherent thought processes and moderate concentration problems (ECF No. 15-7, PageID.529, 531, 533). And Plaintiff only challenges these findings with her own testimony that her depression and anxiety prevented her from performing simple tasks and that her employer noticed she was no longer working at an appropriate and consistent pace (ECF No. 22, PageID.2058 (citing

---

[3] A progress note from this July 27, 2009 doctor's visit states that Plaintiff was working as an administrative assistant at the time. The ALJ cited to this page in the record when he stated: "The claimant was working as an administrative assistant just prior to and shortly after the alleged onset date. (Exhibit 2F/52)." (ECF No. 15-2, PageID.74.)

ECF No. 15-2, PageID.152-153, 157-158)), but accrediting this testimony over the cited records would require the Court to inappropriately re-weigh the evidence. *See Reynolds*, 424 F. App'x at 414.

Finally, with regard to Plaintiff's ability to adapt and manage herself, which "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting," 20 C.F.R. 404, Subpt. P, App. 1, § 12.00E(4), she asserts that she had a marked limitation because: "[S]he could not manage her psychologically based symptoms unless she had help from her mother and was not in a work environment. (ECF No. 15-2, PageID.158-159, 168-169). She could not distinguish her failed work performance until she was told that she was misfiling documents. She needed the daily help of her mother to organize her daily activities and take her medications." (ECF No. 22, PageID.2058-2059.) However, again, a review of the record demonstrates that substantial evidence supported the ALJ's finding that she had only a mild limitation in this area. As the ALJ stated in greater depth as part of his RFC assessment (ECF No. 15-2, PageID.74-75), she was able to attend appointments alone (*see, e.g.*, ECF No. 15-7, PageID.529, 531, 533), and although she spent most of each day with her mother, she ultimately returned to the townhome in which she lived (ECF No. 15-2, PageID.168-170; ECF No. 15-9, PageID.750).

14

Accordingly, substantial evidence does support the ALJ's findings with regard to the Paragraph B criteria, and Plaintiff has not met her burden of establishing error with regard to the ALJ's Step 3 determination. *Buress*, 835 F.2d at 140; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### b. Paragraph C criteria

Alternatively, Plaintiff argues that she meets the Paragraph C criteria (ECF No. 22, PageID.2059-2061) under Listings 12.04 and 12.06, which requires that she have a history of the existence of a mental disorder over a period of two years and evidence of both: (1) "Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [her] mental disorder (see 12.00G2b)"; and (2) "Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

The ALJ concluded that Plaintiff did not satisfy the Paragraph C criteria, stating only: "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria. The file does not show marginal adjustment." (ECF No.

15-2, PageID.73.) I note that Defendant entirely failed to address Paragraph C in its summary judgment motion, but Plaintiff's arguments that the record demonstrates marginal adjustment, in contravention of the ALJ's conclusion, is unavailing.

Specifically, she argues: "Despite the fact that [Plaintiff] had some improvements in mood in response to changes in her medication, she still needed the help of her parents, particularly her mother, to manage the daily requirements of her life. Her ability to adjust was fragile, and her improvements only came when she was not at work. She could not adapt to a work environment. Even in her prior light work environment, she suffered panic attacks. Her panic attacks prevented her from even applying for jobs and filling out an application form. (ECF No. 15-2, PageID.164-165)." (ECF No. 22, PageID.2061.)[4] Again, however, for this argument, she cites exclusively to her own subjective statements regarding her impairments, which the ALJ considered but found not entirely consistent with the medical evidence and other evidence in the record. (ECF No. 15-2, PageID.74.) And, as described in much greater detail above, the ALJ

---

[4] As the ALJ addressed only the marginal adjustment portion of the Paragraph C analysis, I have done the same, as the two requirements, as noted above, are conjunctive. Accordingly, I have not considered Plaintiff's arguments and citations to the record in support of her assertion that she presented sufficient evidence of ongoing medical treatment for her mental disorders. (*See* ECF No. 22, PageID.2059-2060.)

supportably rejected these same arguments when considering the Paragraph B criteria.

Accordingly, the Court should find no error in the ALJ's Step 3 determination, as substantial evidence supports his finding.

### 2. The Court should also find no error in the ALJ's assessment of Plaintiff's RFC

To determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304, at *2. This involves a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 404.1529. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, 2017 WL 5180304, at *3.

Here, the ALJ followed the two-step process, outlining Plaintiff's subjective statements as well as the medical evidence of record, but ultimately determined, as

17

stated above, that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (ECF No. 15-2, PageID.74.) Plaintiff does not challenge this finding as to her testimony's inconsistency with the "medical evidence and other evidence in the record[,]" nor can the Court re-weigh it in her favor. *Reynolds*, 424 F. App'x at 414. And rather than challenge any of the evidence relied upon by the ALJ in formulating her RFC, Plaintiff again cites exclusively to her hearing testimony to argue that her panic attacks, anxiety, major depressive disorder, and other impairments "prevent[ed] her from working at any work location with other people" (ECF No. 22, PageID.2062-2063), which the ALJ supportably contradicted with substantial evidence, as stated more extensively above. Further, Plaintiff's argument seems to focus on her limitations with regard to social interactions, which the ALJ accounted for in the RFC – restricting her to no work with the public, and only occasional interaction with coworkers and supervisors. (ECF No. 15-2, PageID.73.)

### F. Conclusion

Plaintiff has the burden of proof on statements of error. *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this

18

burden shifts to the Commissioner only at Step Five."). Plaintiff has not shown legal error that would upend the ALJ's decision, and the ALJ's decision is supported by substantial evidence. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY AS MOOT** Plaintiff's motion for summary judgment (ECF No. 19), **DENY** Plaintiff's amended motion for summary judgment (ECF No. 22) on the merits, **GRANT** Defendant's motion for summary judgment (ECF No. 24), and **AFFIRM** the Commissioner of Social Security's decision.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: February 24, 2022              _____
                                      Anthony P. Patti
                                      UNITED STATES MAGISTRATE JUDGE